UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Vance Marion Bair and<br>Debra Collier Bair,<br><br>Debtors. | C/A No. 15-03488-DD<br><br>Chapter 7<br><br>**ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT** |

Janet B. Haigler, the chapter 7 trustee ("Trustee"), obtained an order of this Court to sell certain farm equipment free and clear of liens and interests on May 19, 2016 [Docket No. 65]. William Joshua Bair ("Josh Bair") filed a motion for relief from judgment on June 7, 2016 [Docket No. 70]. Trustee filed a response to Josh Bair's motion on June 16, 2016 [Docket No. 74] and a supplemental memorandum in opposition to the motion on August 11, 2016 [Docket No. 89]. Josh Bair filed an amended motion on July 8, 2016 [Docket No. 78], a supplemental affidavit on August 9, 2016 [Docket No. 84], and a memorandum in support of the motion on August 10, 2016 [Docket Nos. 86]. Farm Services Agency ("FSA") filed a response in support of the motion on August 11, 2016 [Docket No. 91]. A hearing was held on the motion on August 11, 2016. At the conclusion of the hearing, the Court took the motion under advisement. The Court now makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

1.  Vance Marion Bair and Debra Collier Bair ("Debtors") filed their chapter 7 bankruptcy case on July 2, 2015.

2.  Josh Bair is Debtors' son. Josh Bair is a farmer and, at one point, farmed in partnership with his father, Vance Bair.[1]

---

[1] In Debtors' previous chapter 12 case, filed in 2014, the order confirming plan indicated that Vance Bair "intends to farm as long as he is able, and that he has no plans to retire from farming in the foreseeable future." The chapter 12

1

3.	Debtors filed their original Schedules and Statements on July 15, 2015 [Docket No. 8]. The July 15 schedules listed various farm equipment owned by Debtors. Debtors filed an Amended Schedule A/B on March 2, 2016 [Docket No. 36] to add various pieces of farm equipment. The amended Schedule A/B listed the following property as owned by Debtors:

> CASE IH 3250 DISC HARROW SER# JAG0754238
> 2008 Model 4810 KMC Peanut Dump Cart S/N 78788
> 2008 Model 2400 Amadas Irrigation Gun S/N 460142
> 2000 Caterpillar 420D backhoe S/N: BLN01766
> John deere 4560 tractor
> John deer [sic] 6700 sprayer
> Amadas Peanut 2100 combine
> John Deere Stack and fold 8 row planters underford strip till 8 row
> John Deere 2040 tractor
> Hopper bottom and 1999 Chevrolet single axle truck
> 1991 Gleaner flex header
> 2000 Case IH 3950 Harrow
> 1998 John Deere Tractor Model 6400
> Two 2008 Franklin pumps (part of irrigation system-value included in real estate)
> Two 2008 Franklin motors (part of irrigation system-value included in real estate)
> KMV Pnut digger
> Side Arm Bush Hog
> Sprayer with lay by boom
> Nitrogen storage tank
> Fertilizer storage tank
> Two (2) John Deere corn headers 444
> John Deere Grain Drill 450
> M and W Grain Dryer
> Westfield Auger WR100-61
> Westfield Grain Pan
> Chandler Spreader
> Field Cultivator
> Aluminum Tank
> 6 inch auger
> 4-row cultivator
> Chisel plows

---

case was dismissed on motion of the chapter 12 trustee when Debtors failed to make plan payments called for by the confirmed plan. However, Josh Bair's supplemental affidavit, filed in the present case, indicates, "In 2011, I began discussing with my parents the prospect of taking over the farm operation. Both my parents had full-time jobs unrelated to farming and wanted to get out of the farming business, while I wanted to farm. I began taking over most of the farming operation in 2012."

        Chevrolet Dump Truck
        John Deere Hooded Sprayer 320
        Fuel tanks: (1) 500 gals and (2) 100 gals
        Nurse Tank 1000 gals on wheels with pump
        Wick Boom

Debtors further amended their schedules on August 10, 2016, after this dispute arose, to delete several pieces of equipment [Docket No. 88]. The statement of change attached to the amended schedules states that the equipment was deleted from the schedules because it "was sold to Josh Bair prior to filing petition under Chapter 7."

    4.    Debtors had a previous chapter 12 bankruptcy case, Case No. 14-02417-dd, which was filed in April 2014. Debtors' schedules filed in the chapter 12 case list the farming equipment and implements owned by Debtors as follows:[2]

        CASE IH 3250 DISC HARROW SER3 JAG0754238
        2008 Model 4810 KMC Peanut Dump Cart S/N 78788
        2008 Model 2400 Amadas Irrigation Gun S/N 460142
        2000 Caterpillar 420D backhoe S/N: BLN1766
        John deere 4560 tractor
        John deer [sic] 6700 sprayer
        Amadas Peanut 2100 combine
        John Deere Stack and fold 8 row planters underford strip till 8 row
        John Deere 2040 tractor
        Hopper bottom and single axle truck
        1991 Gleaner flex header
        2000 Case IH 3950 Harrow
        1998 John Deere Tractor Model 6400
        Two 2008 Franklin pumps (part of irrigation system-value included in real estate)
        Two 2008 Franklin motors (part of irrigation system-value included in real estate)
        KMV Pnut digger

    5.    The confirmed chapter 12 plan does not mention Josh Bair or his intent to purchase equipment from Debtors.[3] However, the order confirming Debtors' chapter 12 plan, entered

---

[2] Debtors' amended Schedule B filed July 25, 2014 [Case No. 14-02417-dd, Docket No. 20].
[3] The feasibility analysis attached to Debtors' original chapter 12 plan filed July 24, 2014 [Case No. 14-02417-dd, Docket No. 19] and amended chapter 12 plan, filed August 25, 2014 [Case No. 14-02417-dd, Docket No. 24], do

3

October 10, 2014 [Case No. 14-02417-dd, Docket No. 34], states that "Joshua Bair *has agreed to purchase* the farm equipment owned by the Debtors".[4]  The order confirming plan does not identify the specific farm equipment to be sold.  The order confirming plan provided for a series of payments from Josh Bair, which were intended as a funding mechanism for Debtors' payments to the chapter 12 trustee, but did not provide for the vesting of title to the equipment.  It is undisputed that none of those payments were made.

6.  On April 20, 2016, Trustee filed a motion to sell certain farm equipment listed on Debtors' schedules free and clear of liens [Docket No. 46].  The addendum to the motion describes the equipment to be sold as follows:

> Including but not limited to all farm equipment listed and not listed on Debtors' Schedules and additional items listed or not listed below, which are present on premises.
>
> Titled:  1999 CHEV CSR7H4 Truck        VIN 1GBM&H1C3XJ108822
>         1978 CHEV E62 Truck            VIN CCE628V105205
>         1980 WLN Trailer               VIN 2X7684
>
> John Deere 8330 Tractor Ser# RW45608002833
>
> All Farm Equipment and Trailers listed as being held for Josh Bair
>
> Quick Attach Forks
> Set of Wheels and Tires
> 5 Disc Tiller Plow
> 4 Grain Wagons
> Fuel Tank
> 2 Liquid Tanks
> John Deere 737 Deck Mower
> John Deere Corn Head for Parts
> Hopper Bottom Auger
> Ditch Bank Cutter
> Sprayer for Corn
> Auger

---

indicate that Debtors have entered into a verbal agreement for Josh Bair to purchase "Debtors' farm equipment." Two additional amended plans without this attachment were subsequently filed, and the amended plan that was confirmed was filed on October 10, 2014 [Docket No. 32].

[4] Emphasis added.

4

>John Deere 1418 Cutter
>Field Cultivator
>2 Tag Trailers
>Aluminum 100 Gallon Tank
>Auger
>Lilliston Cultivator
>Dickie Shields
>Chisel Plow
>2 Row Corn Picker

The addendum contains a notation that although Debtors' schedules indicate that the John Deere 8330 tractor was transferred to Josh Bair, "[p]er verbal conversation with debtor, Vance Marion Bair, no funds were received from [Josh Bair] for transfer of tractor and ownership of tractor has NOT been transferred." The addendum also contains a notation as to the farm equipment and trailers listed on the schedules as being held for Josh Bair, which states, "Schedules were updated after initial inspection. Debtors did NOT indicate these farm related items belonged to Josh Bair."

7. Josh Bair was served with Trustee's motion. Attached to Trustee's motion was a notice which states, in part, "TAKE FURTHER NOTICE that no hearing will be held on this application unless a response, return and/or objection is timely filed and served, in which case, the Court will conduct a hearing." No objections to Trustee's motion to sell the farm equipment were filed, and an order granting Trustee's motion was entered on May 19, 2016 [Docket No. 65].

8. Josh Bair filed his motion for relief from judgment on June 7, 2016 [Docket No. 70]. The motion, and the documents filed by Josh Bair in support of the motion, indicate that Josh Bair called an attorney who had previously represented him in other matters almost immediately after he was served with Trustee's notice and motion. That attorney advised Josh Bair that he should contact a bankruptcy attorney, and referred him to an attorney who practices bankruptcy law.[5] Josh Bair then met with the bankruptcy attorney, who advised him that he would "investigate the

---

[5] Josh Bair is now represented by a third attorney.

5

matter." Josh Bair's motion further indicates that he heard back from the bankruptcy attorney on the date a response to the Trustee's motion to sell was due and that the attorney advised him to attend the hearing on the motion. Josh Bair's motion indicates that he did so, but that he was advised upon arriving at the Court that Trustee's motion to sell had been granted due to the lack of objections and that the hearing had been removed from the calendar. Josh Bair's motion and the supporting documents do not indicate whether or not Josh Bair actually retained an attorney to assist him in connection with the Trustee's motion to sell; however, Josh Bair testified at the hearing on his motion that he did not sign any agreement with the bankruptcy attorney or pay him any money. Nonetheless, for purposes of this matter only, the Court presumes some attorney-client relationship existed.

9.  Josh Bair filed a supplemental affidavit in support of his motion on August 9, 2016 [Docket No. 84], which included a number of exhibits attached to the affidavit. The affidavit indicates that Josh Bair's father conveyed several items to him in May 2013. Attached to the affidavit are two documents dated May 30, 2013. The first states:

> The following farm implements are given to my son, William Joshua Bair of 333 Ivanhoe Road, Bowman, SC 29018:
>
> John Deere 4560[6]
> John Deere 6400
> John Deere 6700 (sprayer)
> John Deere 1720 (planter)
> Unverferth Stripper/Ripper
> John Deere Hoods
> Case 3950 Disc
> KMC Dump Cart
> Amadas Reel Rain II Traveling Gun
> John Deere 444 Corn Headers (2)
> John Deere Grain Drill 450
> Chandler Spreader

The second document states:

---

[6] Serial numbers listed on the documents are omitted.

6

> The following items are financed by John Deere Credit. My son, William Joshua Bair will make final payments in 2013 and the implements will become his property.
>
> John Deere 8330
> KMC 4 row Digger
> Amadas ZZ 2100 Combine

10. Josh Bair's supplemental affidavit indicates that he was present when Trustee's auctioneer, Terry Howe, came to Debtors' property to inspect and inventory the farm equipment. The affidavit further states, "Mr. Howe listed all the equipment he found on the property . . . without asking whether my parents, or someone else, owned it." Josh Bair testified that he was present, at least for part of the time, when Mr. Howe was on Debtors' property inspecting the equipment. Josh Bair testified that he "just thought Mr. Howe was coming to look at" the equipment, and that he told Mr. Howe that 3 grain wagons and 2 tag trailers belonged to him. With respect to other pieces of equipment of which he claims ownership, a fuel tank, a liquid tank, and an auger, Josh Bair testified that he did not know Mr. Howe had those items on his list of equipment.

11. Mr. Howe testified that he visited Debtors' property two or three times. He testified that, to compile a list of the farm equipment owned by Debtors, he started with the schedules filed by Debtors. He testified that when he was out at Debtors' property inspecting the equipment, he noticed that there were several other items of equipment that were not listed on Debtors' schedules. Mr. Howe then advised Vance Bair that he should discuss this property with his attorney. Mr. Howe testified that although he spoke mostly with Vance Bair during his visits to Debtors' property, Josh Bair was present during at least one of his visits and that, contrary to Josh Bair's testimony, Josh Bair never told Mr. Howe that any of the equipment belonged to him and not to his father, Vance Bair. Vance Bair was not called as a witness.

7

12. As noted above, Debtors amended their schedules in March 2016, following Mr. Howe's suggestion that Vance Bair consult counsel regarding the unlisted equipment [See Docket No. 36]. The statement of change attached to the March 2016 amended schedules states that Schedule B is amended to "add various farm equipment."

13. Mr. Howe testified that the list of equipment to be sold by Trustee was created by relying on amended schedules filed by Debtor.

14. On July 10, 2015, FSA filed a proof of claim in Debtors' case in the total amount of $7,957.09, secured by a 7 ring grain bin. However, FSA's response to Josh Bair's motion indicates that FSA also holds security interests in several items of farm equipment Josh Bair purports to own, and that Josh Bair owes FSA a total debt of $376,188.86. FSA's response indicates that FSA filed a UCC-1 in the South Carolina Secretary of State's office on July 17, 2013 to perfect its security interest in the equipment.

15. The particular item at issue in the present matter for FSA is the John Deere 8330 tractor. This item was not listed on Debtors' schedules; however, the addendum to Trustee's motion to sell indicates that Trustee intends to sell the tractor due to the fact that Josh Bair did not pay his father for the transfer of ownership of the tractor, as required by one of the May 30 documents. FSA, despite receiving notice of Trustee's proposed sale, did not file an objection to Trustee's motion to sell. Counsel for FSA indicated that it did not file an objection to the motion because the equipment was under lien to FSA by virtue of the granting of a security interest by Josh Bair, not by Debtors. However, Trustee's notice of sale, which FSA received, indicated that disputes of Josh Bair's ownership in certain property, including the John Deere 8330 tractor, exist, and that Trustee intended to sell the John Deere 8330 tractor.

16. On August 9, 2016, Trustee filed an adversary proceeding against William Joshua Bair, Vance Marion Bair, Debra Collier Bair, and FSA [Docket No. 85]. The adversary complaint asserts causes of action for a determination of Debtors' ownership interests in the equipment and for fraudulent conveyances due to Debtors' alleged transfer of equipment to Josh Bair for no or inadequate consideration.

## **CONCLUSIONS OF LAW**

Josh Bair seeks relief from the order allowing Trustee to sell the equipment pursuant to Federal Rule of Civil Procedure 60(b), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9024. Fed. R. Civ. P. 60(b) provides, in relevant part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1)   mistake, inadvertence, surprise, or excusable neglect;
> (2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4)   the judgment is void;
> (5)   the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6)   any other reason that justifies relief.

Consideration of a motion made pursuant to Rule 60(b) is a two-step process. "First, the movant must make a threshold showing of timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." *In re Cilwa*, Case No. 15-00263-HB, 2016 WL 828284, at *4 (Bankr. D.S.C. Mar. 2, 2016) (citing *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993)). If these four threshold requirements are met, the movant then must satisfy one of the six grounds for relief set forth in Rule 60(b). *Id.* (citing *Dowell*, 993 F.2d at 48). "'Because [Civil] Rule 60 is an exception to the general policy of favoring finality of

9

judgments, relief is granted only to prevent what would otherwise be a clear miscarriage of justice.'" *In re AMF Bowling Worldwide, Inc.*, Case No. 12-36495-KRH, 2013 WL 5575470, at *3 (Bankr. E.D. Va. Oct. 9, 2013) (quoting *In re Jason*, 2005 Bankr. LEXIS 2833, at *14 (Bankr. E.D. Va. Sept. 13, 2005)). Josh Bair is relying on Rule 60(b)(1), due to "mistake, inadvertence, surprise, or excusable neglect."

The parties are in agreement that Josh Bair's motion was timely. The parties disagree on whether the other threshold elements or the requirements of Rule 60(b)(1) are met. The Court addresses each element below.

### i.     A Meritorious Defense

"'To establish a meritorious defense, the defendant must do more than merely allege that he has one. A defendant must allege facts which, if established on trial, would constitute a complete defense to the action. The defenses must be more than "conclusory statements" or "mere denials."'" *M & I Equip. Fin. Co. v. Stein (In re Stein)*, Case No. 1-08017-HB, Adv. No. 11-80173-HB, 2012 WL 12862, at *2 (Bankr. D.S.C. Jan. 3, 2012) (quoting *JP Morgan Chase Bank, N.A. v. Pandolfelli*, 2010 WL 3745123, at *5 (Bankr. D.N.J. Sept. 14, 2010)). Josh Bair asserts that he has a meritorious defense because many items Trustee proposes to sell were owned by him at the time of Debtors' chapter 7 filing and therefore are not property of the estate. He asserts, therefore, that Trustee cannot sell the equipment under 11 U.S.C. § 363, as it only allows Trustee to sell property of the estate. Josh Bair also asserts that he has a second meritorious defense to the sale, that there will be no benefit to the estate from the sale due to the liens on the equipment. Trustee is relying on section 363(f)(4) for authority to complete the sale, asserting that there is a bona fide dispute as to Josh Bair's interest in the equipment.

10

Section 363(f)(4) allows a trustee to sell property "free and clear of any interest in such property" if "such interest is in bona fide dispute." "The purpose of section 363(f)(4) is to allow the trustee to sell property subject to dispute so that the estate's liquidation is not delayed while disputes are litigated." *In re Taylor*, Case No. 11-00156-DD, 2011 WL 3206994, at *4 (Bankr. D.S.C. July 27, 2011) (citing *In re Daufuskie Island Props., LLC*, 431 B.R. 626, 645 (Bankr. D.S.C. 2010)). Some courts hold that this subsection of section 363(f) allows a trustee to sell property if there is a dispute as to the ownership of the property. *See In re Genesys Research Inst., Inc.*, Case No. 15-12794-JNF, 2016 WL 3583229, at *20 (Bankr. D. Mass. June 24, 2016) ("Section 363(f)(4) does not contemplate or require that the court resolve or determine any dispute about ownership before a sale hearing, but rather requires only an examination of whether there is an objective basis for either a factual or legal dispute about ownership."); *In re Hindu Temple and Cmty. Ctr. of Georgia, Inc.*, Case No. 09-82915, 2013 WL 8214672, at *9 (Bankr. N.D. Ga. Mar. 5, 2013) (stating that the court previously authorized the sale of religious relics in possession of the debtor pursuant to 11 U.S.C. §363(f)(4), because the party asserting an interest in the relics was unable to prove it had any interest in them; stating that section 363(f)(4) "permits the sale of property that is subject to a dispute as to ownership"); *In the Matter of Durango Georgia Paper Co.,* 336 B.R. 594, 597-98 (Bankr S.D. Ga. 2005) (finding that groundwater was properly included in assets to be sold because there was a bona fide dispute as to the ownership of the groundwater). Other courts hold that a determination must be made as to whether property is property of the estate before it can be determined whether or not a bona fide dispute exists. *In re Rodeo Canon Dev. Corp.*, 362 F.3d 603, 608 (9th Cir. 2004) (stating that issue regarding ownership of property should have been decided before trustee could sell property as property of the estate) (opinion withdrawn due to subsequent stipulation of parties that facts on which the court relied were

11

incorrect); *In re BHB Enters., LLC*, Case No. 97-01975-JW, 1997 WL 33344250, at *2 (Bankr. D.S.C. Sept. 30, 1997) (stating that before allowing a sale under section 363(f), the court must determine whether assets are property of the estate, but ultimately allowing the sale of the assets because party asserting interest in assets failed to contest the trustee's argument and proffered evidence that the assets were assets of the estate).  At least one court has stated, "The threshold determination as to the existence of a bona fide dispute necessarily requires a finding that the disputed property is or **could become** property of the bankruptcy estate." *In re Robotics Vision Sys., Inc.*, 322 B.R. 502, 508 (Bankr. D.N.H. 2005) (citing *In re Rodeo Canon Dev. Corp.*, 362 F.3d 603, 608 (9th Cir 2004); *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 172 (9th Cir. B.A.P. 2001)) (emphasis added).

It is unnecessary for the Court to determine the section 363(f)(4) issue because, as discussed below, the other elements required for relief under Rule 60(b) are not met.  An adversary proceeding is pending which will determine ownership and lien rights in the equipment.  Josh Bair's and Trustee's positions regarding ownership of the equipment and avoidance of transfers will be addressed by the Court in connection with that adversary proceeding.  No determination regarding those interests is made here.

### ii.     A Lack of Unfair Prejudice

Josh Bair asserts that there is a lack of unfair prejudice because Trustee has not taken any significant steps to move forward in preparation for the sale.  In so arguing, Josh Bair relies on a printout from http://www.terryhowe.com/auctions, dated June 6, 2016, the day before his motion was filed, which Josh Bair argues shows that the Bair auction has not yet been actively advertised. Josh Bair argues that this shows that, as of that date, Trustee had not yet made any significant

preparations to sell the farm equipment. No other testimony or evidence was presented regarding prejudice to Trustee.

Josh Bair has established that there will not be unfair prejudice to Trustee if his motion is granted. Josh Bair presented evidence that Trustee had not begun to advertise for the sale. Josh Bair's motion to vacate was filed over two weeks prior to Trustee's proposed sale date. Trustee presented no evidence regarding any unfair prejudice she would suffer in the event the order granting her motion to sell was vacated. Josh Bair has met this element.

### iii. Exceptional Circumstances

Josh Bair argues that exceptional circumstances exist here because Trustee proposes to sell property despite a question regarding the ownership of the property and despite the fact that the list of equipment to be sold was created based on the farm equipment's location on Debtors' property rather than actual ownership. Josh Bair also argues that Trustee had constructive knowledge of FSA's lien on the John Deere 8330 tractor prior to the date the order granting her motion to sell was entered, by virtue of FSA's UCC filing.[7] Josh Bair argues that the circumstances here are exceptional because despite FSA's lien, Trustee took the "overly expeditious" approach of attempting to go ahead and sell the equipment. Josh Bair argues that this was procedurally improper and that this action, coupled with Trustee's attempt to sell equipment that Josh Bair argues is not property of the estate, constitute exceptional circumstances.

Josh Bair's conduct is inconsistent with an exceptional circumstances finding. Josh Bair testified that he did not retain or pay the bankruptcy attorney with whom he consulted, and he did not file an objection to the motion to sell. Conflicting testimony was presented regarding whether Josh Bair informed Mr. Howe of his ownership of certain items of farm equipment upon Mr.

---

[7] Trustee disputes this allegation.

13

Howe's visits to Debtors' property to inspect and inventory the equipment, and Mr. Howe's testimony regarding his visits to Debtors' property was more credible than Josh Bair's testimony. Josh Bair did not call his father as a witness despite the representations in Trustee's notice of sale that the equipment had not been paid for by Josh Bair and was not his property. Thus, he did not assert his ownership in the equipment either by filing an objection to Trustee's motion to sell or by raising the issue with Mr. Howe, the auctioneer.

Additionally, numerous inconsistencies exist in the record regarding the ownership of the various items of farm equipment, and Josh Bair did not act to protect his interest despite Trustee's obvious intention that an auction occur, and notice by Trustee to that effect. The two documents purporting to convey various pieces of farm equipment from Vance Bair to Josh Bair were executed in May 2013 but are inconsistent with representations to this Court nearly a year later, when Debtors filed their chapter 12 case, listing on their schedules at least some of the same pieces of farm equipment. Josh Bair then appeared as a witness and potential purchaser in his parents' chapter 12 case and agreed to purchase farm equipment, as a term for confirmation of Debtors' chapter 12 plan. His payments for the equipment, which were never made, were intended to be a source of funding for the plan. Then, in Debtors' current chapter 7 case, Debtors listed both on their initial 2015 schedules and their amended March 2016 schedules some of the very same equipment that was purportedly conveyed to Josh Bair pursuant to the May 30 documents and subsequently proposed for sale by Debtors to Josh Bair in Debtors' chapter 12 case.[8] Given the inconsistencies in the record, with the information presently before the Court, it is difficult, if not impossible to tell who claims ownership of which items, much less who actually owns those items. What is clear is that Josh Bair significantly contributed to the confusion and did not take advantage

---

[8] For example, the John Deere 4560 is listed on one of the May 2013 documents, Debtors' chapter 12 schedules, and Debtors' schedules in the current chapter 7 case.

14

of several opportunities to raise the issue of ownership of the equipment so that it could be addressed before an order granting Trustee the authority to sell the equipment was issued.

It is also disputed whether or not Trustee was aware of the extent of FSA's lien on the farm equipment prior to the entry of the order granting the motion to sell. FSA did not object to the sale, and FSA's counsel indicated at the hearing that it did not object because its security interest arose by virtue of interests granted to it by Josh Bair, not Debtors; however, the only information Trustee had, from Vance Bair, was that the equipment belonged to Debtors. The notice of sale, served on FSA, expressly provided for sale of the equipment, including the John Deere 8330 tractor, and FSA did not object.

Based on the lack of objections to Trustee's motion to sell, Josh Bair's failure to protect his interests in the equipment, the inconsistent representations by Debtors and Josh Bair regarding ownership of the farm equipment, and the other inconsistent information in the record, the Court does not find exceptional circumstances warranting reconsideration of its order granting Trustee's motion to sell.

    **iv.**    **Rule 60(b)(1)- mistake, inadvertence, surprise, or excusable neglect**

As set forth above, Josh Bair has not made the threshold showing required under Rule 60(b); as a result, it is unnecessary for the Court to address whether Josh Bair has established a basis for relief under Rule 60(b)(1). However, the Court notes that this showing has also not been met. Josh Bair argues that excusable neglect exists here because he took reasonable steps to protect his interests in connection with Trustee's motion to sell and was damaged, through no fault of his own, by poor advice from the bankruptcy attorney he consulted. He asserts that these circumstances constitute a basis for reconsideration under Rule 60(b)(1).

15

This Court has previously noted that courts are not consistent in their treatment of cases in which an attorney's mistake or negligence has caused a case to be resolved against his client. The Court attempted to reconcile the cases by stating, "[I]t appears that one main difference between these sets of cases is whether the attorney's actions caused the party's case to be dismissed or disposed of other than on the merits." *In re Loper*, 447 B.R. 466, 469 (Bankr. D.S.C. 2011). However, the Court also stated, "[C]ourts generally recognize that if a party is at fault, he himself must make an adequate showing under Rule 60(b) in order to be granted relief." *Id.* at 470 (citing *Heyman v. M.L. Mktg. Co.*, 116 F.3d 91, 94 (4th Cir. 1997)). This is where Josh Bair's motion again falls short.

There are numerous inconsistencies in the record regarding the ownership of the various items of farm equipment. Further, although Josh Bair was present at least during one of Mr. Howe's visits to Debtors' property, Mr. Howe's testimony, which the Court finds credible, established that he did not express any claim of ownership to the equipment.[9] The inconsistencies, lack of specificity in listing the equipment in Debtors' bankruptcy cases, and Josh Bair's failure to clearly claim ownership of the equipment, despite having opportunities to do so, are all factors that indicate that Josh Bair bears significant responsibility for the current situation in which he finds himself.

Finally, with respect to Josh Bair's legal counsel, neither attorney he consulted in connection with Trustee's motion was called to present testimony regarding what services, if any, they had been engaged to provide for Josh Bair, and in the absence of some evidence, the Court

---

[9] Although Josh Bair testified that he "just thought Mr. Howe was coming to look at" the equipment, it appears Josh Bair was aware that Mr. Howe was an auctioneer for Trustee, and there is no other reasonable explanation as to why Mr. Howe would be visiting Debtors' property to inventory and inspect the equipment. Josh Bair also testified that he had to crank one of the pieces of equipment for Mr. Howe to get the hours off of it, further suggesting that Josh Bair was aware of the purpose for Mr. Howe's visit.

will not speculate as to the advice given by either attorney.  Regardless, Josh Bair cannot rely on an attorney's mistake or negligence as a basis for relief under Rule 60(b)(1) when he bears much of the responsibility.  No mistake, inadvertence, surprise, or excusable neglect exists here.

## CONCLUSION

For the reasons set forth above, Josh Bair's motion is denied.  The Court's Order granting Trustee's motion to sell the equipment free and clear of liens remains in effect.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**08/22/2016**



Entered: 08/23/2016

David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina